Next case is Bruce Benefield v. Joanne Benefield. And Mr. Turner, are you ready to proceed? Yes, I am. Please do so. May it please the Court and Counsel. Your Honor, we're here today with regard to a dismissal of an action brought by Bruce Benefield against Joanne Benefield, the trustee of the Joanne Benefield Trust. We supplied with our brief a statement of facts which has gone unchallenged, hasn't been supplemented, hasn't made any effort to retract them. So we assume those statements of facts are correct in the opinion not only of Mr. Benefield but also as to the trustee. I think one of the problems in a case like this is that when you look at Joanne Benefield, you see Joanne Benefield the individual. When you look at Joanne Benefield, the trustee, you see Joanne Benefield. They look exactly alike. You can't tell them apart. And so you get a mental mindset, I believe, that they are the same. But the whole reason in having trusts and trustees are to separate those entities and make them something different. So I think when we read this and look at this case, if we call her the trustee or the trust company or first bank and trust, insert that everywhere, Joanne Benefield the trustee appears, you get a different sense of what's going on and you see the difference. Joanne Benefield created a trust years ago, back in the 90s, and she made herself the trustee of that trust. She is not a beneficiary. There's no dispute that. The trust document that's been provided identifies three individuals who are the beneficiaries. The duties of the trustee are to hold that property to the benefit of those individuals, segregate those into three different trusts, make certain provisions. If one of them dies, anyway, it passes on. That trust, to our knowledge, has never been modified, never been altered, amended, or revoked in any fashion. After that trust was made, a deed was made to Joanne Benefield as trustee of that trust, placing legal title to some property in Williamson County into the trust. The equity belongers at that point, I'm assuming, would be the beneficiaries because it was held for their benefit. At a point after that, Joanne Benefield then made a deed individually without the designation of trustee and made the deed to that same property into her name and Bruce Benefield's name. She didn't have legal title to it. She wasn't a beneficiary. She had no equitable title to it. And so she's saying nothing happened in that transaction. The facts are undisputed, and the complaint that we filed indicates that significant sums of money were put into that tract of land, resulting in the price being $290,000 at the time of sale. The trust was still in possession of land, still entitled to the land, still had the authority to deed the land because it did, in fact, convey that land to Missoula's, I think in 2005 or 2006. Conveying title to them, they took possession, and the trustee received $290,000. Now, once that happens, we're not talking about land anymore. We're talking about the money that was received. And the money that was received was for the land. Now, where there's also another issue, not a problem issue, but a problem, is that normally a trustee doesn't know everything a third party does. But imagine Joanne Benefield gets on the phone and says, hey, first bank and trust, here's what I'm going to do. And calls them the next day and says, we've done it. Calls them the day after that, we've bought materials. We're doing this. We've done that. Kept them informed every step of the way. She didn't have to call because it's the same human body filling both entities. But had it been first bank and trust, she calls them up and says, tells them everything that happens to the first bank. Says, gee, that's nice. I appreciate you doing this. She says to the first bank and trust, Bruce believes he owns this. Bruce believes he has half of it. Bruce put all this money in anticipation of sale. Calls them up later and says, hey, Bruce and I are going to list this piece of property for sale. Trustee's silent. Doesn't sell. Then later on, there's some breakup in this arrangement, and the trustee then sells the property to Missoula. They're free and clear. It's gone. There are these other cases. There are a myriad of attorneys involved in all of these cases. But when we look at the cases, I appreciate the fact that the council did supplement the record to bring in the complaint from Williamson County. But when you look at that complaint, Williamson County says from 2002 to 2004, we acquired the property in a partnership. That's all it says. We acquired it. And the suit in Williamson County says we want an accounting for rents and profits, the income, the losses, and expenses that relate to the partnership that was created. And based on the properties acquired between 2002 and 2004, the trustee actually going to benefit the individual, not the bank, not the trust company. The individual shows up and says, hey, there's a case just like this in Alexander County. Judge, you ought to dismiss it. And that case is a partition suit, and that complaint is in the file also. The partition suit only addresses property located in Alexander County. It doesn't address any property located in Williamson County. It doesn't talk about anything other than that property. And as a consequence, Williamson County dismisses the litigation in regard to the partnership and the properties acquired between 2002 and 2004. And let's remember that by the time that's filed, the other property is gone. The Williamson County property has been sold by the trustee. It's not there anymore. The trustee was not a party to the litigation in Williamson County. The trustee was not a party to the litigation in Alexander County in any capacity, at any time for that matter. And then Williamson County is gone. They fall back to Alexander County. They file an answer. I think that was Patrick Cox, who you may be familiar with. He files an answer. It doesn't file anything having to do with the county. Although he was given authority in June of 2006 to file something, a counterclaim for accounting. And that was it, accounting. Then a judgment partition was entered in January of the following year. Gave him 21 days, Patrick Cox, to file an accounting, a counterclaim for accounting only. Patrick Cox, anyway, he's out of the picture. Patrick Cox is gone. At some point in time, I entered my appearance in that case. And we ultimately filed a tardy request to amend. Now, you've got to remember, the partition suit was, for all practical purposes, over at that point. The property, I think, had been sold. It was ready to be sold. The proceeds were there. And the only issue that the judge had left open was accounting. That was the only issue left open. We attempted at that point to file a counterclaim and to bring additional parties in. The trustee, for instance. We wanted to bring the bank in. We wanted to bring the trustee in and bring these other issues up. Now, the trustee never got in. That was denied. No other party was ever brought into the case. The trustee never became a party. The respondents in discovery were never made a party. We asked for permission to do that, and that was denied. That was in the 2006 Alexander County partition case. So, that having been denied, the partition concluded and resolved all those issues. This case, however, is a case where we're saying that the trustee was unjustly enriched by half of the net proceeds from the sale of the house because the trustee knew at all times exactly what was going on, never did anything to correct the situation, never did anything to forewarn Mr. Benefield, accepted all the improvements, the cash that he put into the property, and unjustly enriched himself as a consequence. That's the first time that Joanne Benefield has been in. Now, privity of parties, Joanne Benefield is not in privity with Joanne Benefield, the trustee. She's not in privity with the bank because her interests are different. She does have a right to revoke, but she did not do that. The only people that have an interest in that and who could have had privity would have been had we sued the individuals who were the beneficiaries. Had we sued the trustee some previous time that they've been involved, they were never brought in. As a consequence, we lack privity of parties. There was no association that would make it happen here, and I believe that we're entitled to go back and continue this case to its conclusion with the defendant being Joanne Benefield, the trustee, and nothing to do with Joanne Benefield, the individual. These are two separate things entirely. Partition was to partition the only land remaining in the party's two names, and it says that in the complaint. This is to correct an unjust enrichment, an improper benefit to the trust, and for those reasons, your honor, we believe that race, gene account, and estoppel are not applicable here. Unless you have questions, I have nothing more to say. No, thank you. Mr. Johnson. Thank you. And please record opposing counsel. I'm Mark Johnson. I represent the defendant at we Joanne Benefield. Mr. Turner's reference to the facts in this case are undisputed. They are not, however, relevant to what the disposition that occurred in the trial court. Those facts are soon to be, that are well-played, are soon to be true. This case was dismissed on procedural ground of race due to free essential elements, as the court knows, one of which has been waived by Mr. Benefield, and that is the final judgment on the merits. The only argument made for this court by the plaintiff, Mr. Benefield, is the identity of the causes of action and the identity of the parties. I want to stop you there on the cause of action because I went back and because the trial court cited Woolsey, I looked at Torcaso v. Standard, which is the Supreme Court case that Woolsey relied on, and it talks about what identity of a cause of action is, and it describes a single group of facts and a test to determine whether or not there is a single group of facts is whether or not the evidence needed to sustain the second action would have sustained the first. And in trying to apply that to the facts as I understand them, I don't know how that could work here. I think the true authority, or the dispositive authority here, is the Illinois Supreme Court's decision in River Park v. City of Highland Park that I've cited. I think opposing counsel did as well, which basically is a recitation of a restatement on that, and to quote that as I did in the brief, it's a transactional test, and it's whether or not the causes of action arise from a single group of operative facts, regardless of whether they have different theories of relief, and regardless of whether or not there's any overlap of the evidence. Then the restatement is cited with approval by the Supreme Court of River Park, and it says, and I think this is particularly relevant here, it says that the claims are extinguished in an identity of the causes of action if they are part of the transaction or a series of connected transactions out of which the action arose. And then they go further to talk about that transaction and grouping in series could be determined by a pragmatic approach, by giving due weight to time, space, origin, motivation, and whether or not it forms an appropriate trial unit. And as I indicated in the brief, the common thread here that makes this part of the operative facts is this entire complaint against the Benefills that started in Williamson County, morphed into Alexander County 1 and Alexander County 2, has been my ex-wife and I acquired a bunch of real estate together, we acquired personal property together, and I think we have a partnership that we might like to dissolve. That certainly fits under the purview very cleanly of the Supreme Court's holding in River Park and restatement. That's a core group of facts. When Mrs. Benefill was sued in Williamson County, that case was dismissed. It was based on an accounting and a partnership about acquisition of real estate, and there might have been a reference to personal property. That case was dismissed because Alexander County 1 was filed three days before it, but the court, and part of this, Mr. Turner was not present because this is the fifth change of attorneys. But are you saying that the Williamson County suit did encompass this property? I thought it was... There's no way to tell from looking at the pleadings whether it encompasses this property or not. I thought there was a pleading that narrowed the time frame that would have been beyond... That was Williamson County. Well, that's what I'm saying. But when Alexander County Partition Act was brought, I brought that on behalf of Mrs. Benefill's property in Alexander County, Mr. Benefill was given the opportunity to file a responsive pleading and a counterclaim on all the issues that he wanted to bring before that court. He had that opportunity. That's the first opportunity he had. He didn't avail himself of that opportunity. I think the reason it's not necessarily clear from the record is he'd been through two previous attorneys at that point, and it wasn't until nine months later that Mr. Turner comes in to represent Mr. Benefill and attempts to bring these very same causes of action in Alexander County. And the court said, you're not timely. You've waited too long to bring those claims. They're exactly the claims that have been brought in the present case. They are the same. It is the same Williamson County property that Alexander County case number 2006-CH9 Mr. Benefill attempted to bring. He said, I want some accounting of my share of the proceeds of the Williamson County property. He says that in a pleading entitled an amended motion for leave to file a counterclaim. That was denied. It's exactly verbatim the same allegations. And the court said, no, you're not timely. You were given leave nine months ago. You didn't file it timely, and the court denied the motion to file that counterclaim. That adjudication, as they've conceded, is an adjudication that's final and on the merits. Now, at that point, he cannot bring the cause of action against Ms. Benefill, either to pass it individually or as a trustee, which brings me to the last element of res judicata, which is the identity of the parties. Now, there are three basic reasons why the identity of the parties are sufficient to meet that element of res judicata. One is that Mr. Benefill, when he filed his amended motion for leave to bring in the claims on Williamson County in the first Alexander County case, he said, I'm going to count three. I want to sue Joanne Benefill as trustee. Same claim he's bringing now. That's one reason why there was identity of parties. Two is the privity issue. And there's a whole big and horrible case I cited, and the other case was State Farm, the casualty, that indicates that where there is a representative relationship, and Joanne Benefill was both settlor, a grantor of that trust, and the trustee. That's sufficient privity. But I think the most dispositive way you have identity of the parties is because the application of the doctrine of res judicata and collateral estoppel both focus on the party against whom the doctrine is asserted. That identity of parties is not a claim they should be making to us. We're saying, we're asserting to them, look, you are precluded from bringing this claim because you had two different chances in Alexander County, case number 2006-CH9. You could have filed responsibly. You could have brought any kind of claim you wanted to about this Williamson County property that was parceled, all this other property you say that was bought and sold between the two over these last ten years. You didn't do it. You had another chance to file one after the property was partitioned in Alexander County where the court said you have leave to file a counterclaim about an accounting on these partnerships. Miss both of those. At that point, then, res judicata is a doctrine that is asserted against them. The identity of the party is relevant for the plaintiff's point of view, not ours. Bruce Benefill has been the same party throughout this entire procedure. The doctrine is asserted against Bruce Benefill. And the quote I put in the brief is that that's what's relevant. It doesn't matter who's on the other side. Res judicata isn't applicable to the plaintiff. Has there been a change in the plaintiff? Did Bruce Benefill bring that claim as a trustee and then later change it to himself individually, like the Marvel case or something like that? That could have been a legitimate explanation. But the holding that I cite is apt. It says very plainly that the doctrine of res judicata and its cousins, but I'll stop with, focuses on the identity of the parties against whom the doctrine is asserted. That's State Farm. And they go on to quote Sweeney v. Campbell. And again saying it's bottomed on the ground that the party to be affected had the opportunity. That's Bruce Benefit. He's been the same throughout this procedure. So the identity of the parties has been clearly met in any one of those three ways, that one being the most dispositive. We have a waiver of the issue of a final judgment on merits. The second element was the identity of the causes of action. They're identical when you look at the Alexandria County acquittings that I supplemented the record on. They're identical to what's brought to this court now. And the identity of the parties was such that Joanne Benefit was mentioned in the first proceeding. There was privity in those capacities as trustee and settlor. And finally, most importantly, there was identity because the doctrine is not being asserted against us, Joanne Benefit or Joanne Benefit's trustees, it's being asserted against Bruce Benefit. And for those reasons, the trial court was proper in granting the motion to dismiss on the basis of res judicata. Professor, any further questions? I do have one troubling note to bring before the court. It's Justice Donovan's laptop. It gives me further concern that I'm staying way behind time. Well, note that there's only one. And you don't even know if it's turned on. Yeah. I'll be taking the bargain. Please proceed. Again, I want to, in response to the question that Justice Chapman brought up, I want to read the first sentence in paragraph one of the action that's been referred to in Williamson County. Born about June 1, 2002, Bruce Benefit and Joanne Benefit entered into a partnership. That's the day the partnership began on that date. It goes on to show that during the period, and I'm on paragraph four on page two of that complaint, during the period from June 1, 2002 and October 3, 2004, the partnership acquired certain property. That is exclusive of the dates when she acquired her interest or he thought he'd acquired an interest in what was a marital residence. It wasn't partnership property. He thought he was married to her. That's where they lived as husband and wife, although not truly married. That's where they actually lived. That's where they built their house. The other thing I want to point out, at A-17, there's a trustee's deed, and it was recorded 18 November, 2005, and that was from Joanne Benefield to a suitor. The property didn't exist when any of these actions were brought. The partition suit specifically limited it to the action in that county in regard to real estate exclusively in that county, and at the point in time when the league was ready to file a counterclaim, that was for an accounting during the period of time that property and relative to that property was made. To say that there is an identity of the parties, privy parties, because she is a settlor and the trustee doesn't mean a thing. She was a settlor. She put the stuff in the hands and possession and tied it into the trustee. That's where it was. She was not a beneficiary. It was never revoked, never returned to her, and for those reasons, there was no privy of parties. The other thing, and again in response to Justice Chatelain, there was never an issue before any court except a request to amend, to add parties when we would have added Joanne Benefield. There was never, and the claims are actually different. One is that the trustee knew what was going on, sat there and reaped the benefits unjustly and ought not be able to retain them. The other one is that Joanne breached a contract, and the contract is the deed that she actually made and put his name, and showed it to him and got the squalor. I have nothing further. Do you have questions? No. Thank you. Thanks to both of you for your arguments this morning and your briefs, and we'll take the matter under advisement. This time we're going to break for lunch.